UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLORADO

IN RE:                            )
                                  )          Case No. 12-28864-HRT
FRANCISCO J. DOMINGUEZ            )
SSN: XXX-XX-9115                  )          Chapter 11
                                  )
Debtor.                           )

## THIRD AMENDED PLAN OF REORGANIZATION

### DATED FEBRUARY 3, 2014

Francisco J. Dominguez ("Dominguez" or "Debtor") hereby proposes, pursuant to Chapter 11, Title 11 of the United States Code, the following Plan of Reorganization.

## ARTICLE I

## INTRODUCTION

Dominguez is an individual who resides in Peyton, Colorado and primarily does business in Colorado Springs, Colorado. Dominguez is the owner of several businesses. His primary business is Edemco Dryer, Inc. ("Edemco"), a company engaged in the business of manufacturing and distributing pet grooming equipment. Dominguez has been involved in the pet industry since 1979. Dominguez is also the sole partner of the Dominguez Family, LLLP, which holds title to the commercial real property in Colorado Springs, Colorado that Edemco uses for its business operations (5655 and 5675 Parachute Circle). Dominguez also has a business using his real property in Peyton, Colorado as a horse boarding business (2245 and 2735 Slocum Road). Dominguez' personal guarantees related to Edemco and Dominguez Family, LLLP, as well as a desire to downsize his personal financial affairs led to the Chapter 11 filing.

This Plan provides for the reorganization of the Debtor under Chapter 11 of the Bankruptcy Code. Pursuant to the Plan, the Debtor shall restructure his debts and obligations and continue to operate in the ordinary course of business. A more complete history of the Debtor, his operations, an explanation of this Plan, and a description of the Debtor's financial condition and future business activity is contained in the Disclosure Statement which accompanies this Plan. Reference should be made to

1

the Disclosure Statement by all creditors and parties who intend to cast a ballot for or against this Plan.

## ARTICLE II

## DEFINITIONS

2.01 - <u>Administrative Claim</u> shall mean a Claim for payment of an administrative expense of a kind specified in § 503(b) or 1114(e)(2) of the Bankruptcy Code and entitled to priority pursuant to § 507(a)(2) of the Bankruptcy Code, including, but not limited to: (a) the actual, necessary costs and expenses, incurred after the Petition Date, of preserving the estate and operating the business of the Debtor, including wages, salaries, or commissions for services rendered after the commencement of the Chapter 11 Case; (b) Professional Fee Claims; (c) all fees and charges assessed against the estates under 28 U.S.C. § 1930; and (d) all Allowed Claims that are entitled to be treated as Administrative Claims pursuant to a Final Order of the Bankruptcy Court under § 546(c)(2)(A) of the Bankruptcy Code.

2.02 - <u>Allowed Claim</u> shall mean a claim in respect of which a Proof of Claim has been filed with the Court within the applicable time period of limitation fixed by Court Order in this case or scheduled in the list of creditors prepared and filed with the Court pursuant to Bankruptcy Rule 1007(b) and not listed as disputed, contingent or unliquidated as to amount, in either case as to which no timely objection to the allowance thereof has been filed pursuant to Bankruptcy Rules 3001 and 3007 or as to which any such objection has been determined by a Final Order.

2.03 - <u>Allowed Secured Claim</u> shall mean an allowed claim secured by a lien, security interest or other charge against or interest in property in which the Debtor has an interest, or which is subject to setoff under § 553 of the Code, to the extent the value (determined in accordance with § 506(a) of the Code) of the interest of the holder of any such allowed claim and the Debtor's interest in such property or to the extent of the amount subject to such setoff as the case may be.

2.04 - <u>Avoidance Actions</u> means the Debtor's estate's interest in any and all Claims, rights and causes of action which have been or may be commenced by or on behalf of the Debtor to avoid and recover any transfers of property determined to be preferential, fraudulent or otherwise avoidable pursuant to §§ 544, 545, 547, 548, 549,

550 or 553 of the Bankruptcy Code, or under any other applicable law, or otherwise subject to equitable subordination under § 510 of the Bankruptcy Code, regardless of whether or not such actions have been commenced prior to the Effective Date.

2.05 - <u>Claim</u> shall mean any right to payment, or right to any equitable remedy for breach of performance if such breach gives rise to the right to payment, against the Debtors in existence on or as of the Petition Date, whether or not such right to payment or right to an equitable remedy is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, secured or unsecured.

2.06 - <u>Class</u> shall mean any Class into which Allowed Claims are classified pursuant to Article III.

2.07- <u>Class 1-15 Claims and Interests</u> shall mean the Allowed Claims and Interests so classified in Article III.

2.08 - <u>Code</u> shall mean the Bankruptcy Code, 11 U.S.C. § 101 *et seq.* and any amendments thereof.

2.09 - <u>Confirmation Date</u> shall mean the date upon which the Order of Confirmation is entered by the Court.

2.10 - <u>Court</u> shall mean the United States Bankruptcy Court for the District of Colorado in which the Debtor's Chapter 11 case is pending, pursuant to which this Plan is proposed, and any Court having competent jurisdiction to hear appeal or certiorari proceedings therefrom.

2.11 - <u>Debtor</u> shall mean the Debtor, Francisco J. Dominguez, who is proposing this Chapter 11 Plan.

2.12 - <u>Disclosure Statement</u> shall mean the Disclosure Statement which is approved by the Court according to 11 U.S.C. § 1125 to be utilized to solicit votes for this Plan.

2.13 - <u>Disputed Claim</u> means any Claim which is not an Allowed Claim, including, without limitation, any Claim designated as disputed, contingent or unliquidated in Debtor's schedules filed in connection with this case, or any Claim against which an objection to the allowance thereof has been interposed, and as to which no Final Order has been entered.

3

2.14 - <u>Effective Date of the Plan</u> shall mean the date on which the Order of Confirmation is entered by the Court.

2.15 - <u>Final Order</u> shall mean an order or judgment of the Court which shall not have been reversed, stayed, modified or amended and as to which (a) the time to appeal from or to seek review, rehearing or certiorari shall have expired, and (b) no appeal or petition for review, rehearing or certiorari is pending or if appealed shall have been affirmed, or the appeal dismissed by the highest court to which such order was appealed, or if review, rehearing or certiorari was sought, such review, rehearing or certiorari has been denied and no further hearing, appeal or petition for review, rehearing or certiorari can be taken or granted or as to which any right to appeal or to seek a review, rehearing or certiorari has been waived.

2.16 - <u>Interest</u> shall mean any ownership interest or any other instrument evidencing any ownership interest in the Debtor's assets.

2.17 - <u>Order of Confirmation</u> shall mean the Order entered by the Court confirming the Plan in accordance with the provisions of Chapter 11 of the Code.

2.18 - <u>Petition Date</u> shall mean the date on which the voluntary Petition was filed by the Debtor on September 11, 2012.

2.19 - <u>Plan</u> shall mean this Plan of Reorganization, as amended in accordance with the terms hereof or modified in accordance with the Code, including all exhibits and schedules attached hereto or referenced herein or therein.

2.20 - <u>Priority Claim</u> means any pre-petition Claim entitled to a priority in payment under § 507(a) of the Code, but shall not include any Administrative Claim or Tax Claim.

2.21 - <u>Pro Rata</u> shall mean the ratio of an Allowed Claim or Interest in a particular Class to the aggregate amount of all Allowed Claims or Interests in that Class.

2.22 - <u>Professional Fees</u> means the Administrative Claims for compensation and reimbursement submitted pursuant to §§ 330, 331 and 503(b) of the Code by a Professional Person.

2.23 – <u>Reserved Claims</u>:  The Debtor reserves the right to pursue any causes of action or assert any defenses he may have, including any and all rights under all

applicable agreements and state and federal law, including, but not limited to, all rights of setoff and recoupment, indemnification, subrogation, contribution and exoneration. Such reservation of rights includes, but is not limited to, rights with respect to any co-owner of property of the Debtor and to any member or partner of any business entity in which the Debtor is also a member or partner, including, but not limited to Juan M.T. Treviso and Alonso Dominguez.

2.24 - Rules shall mean the Federal Rules of Bankruptcy Procedure and Local Bankruptcy Rules for the District of Colorado as adopted by the Court.

2.25 - Tax Claim means any unsecured Claim of a governmental unit for taxes entitled to priority pursuant to 11 U.S.C. § 507(a)(8).

2.26 - Unclassified Priority Claims shall mean Claims pursuant to Section 507(a)(2) which are Administrative Claims allowed under Section 503(b) of the Code and any fees and charges against the estate under Chapter 123 of Title 28 of the United States Code and shall further mean Allowed Unsecured Claims of governmental units to the extent provided for in Section 507(a)(8) of the Code.

2.27 - Other Definitions.  Unless the context otherwise requires, any capitalized term used and not defined herein or elsewhere in the Plan but that is defined in the Code or Rules shall have the meaning set forth therein.

## ARTICLE III

### DESIGNATION OF CLAIMS AND INTERESTS

The following is a designation of all classes of Claims and Interests other than those Claims of a kind specified in Sections 507(a)(2), 507(a)(3) or 507(a)(8) of the Code.

Class 1 - All Allowed Unsecured Claims specified in Section 507(a)(4) and 507(a)(5) of the Code as having priority.

Class 2 - The Allowed Secured Claims held by the El Paso County Treasurer on the Debtor's real property located in El Paso County.

Class 3 - The Allowed Secured Claim held by JPMorgan Chase Bank, N.A. (or its successors or assigns) secured by a deed of trust encumbering the property at 2245 Slocum Road, Peyton, Colorado.

Class 4 - The Allowed Secured Claim held by The Bank of New York Mellon, as Trustee/Vanderbilt Mortgage and Finance, Inc. (or its successors or assigns) secured by a deed of trust encumbering the property at 2735 Slocum Road, Peyton, Colorado.

Class 5 - The Allowed Secured Claim held by PNC Mortgage (or its successors or assigns) secured by a first deed of trust encumbering the property at 250 Haversham Drive, Colorado Springs, Colorado.

Class 6 - The Allowed Secured Claim held by Pikes Peak Regional Development (or its successors or assigns) secured by a second deed of trust encumbering the property at 250 Haversham Drive, Colorado Springs, Colorado.

Class 7 - The Allowed Secured Claim held by Ford Motor Credit Company, LLC (or its successors or assigns) secured by a lien encumbering a 2008 Ford F450 truck.

Class 8– The Allowed Secured Claims held by Ally Financial (or its successors or assigns) secured by a lien encumbering a 2011 Chevrolet Avalanche.

Class 9 - The Allowed Secured Claim held by Security Service Federal (or its successors or assigns) secured by a lien encumbering a Buick Enclave.

Class 10 - The Allowed Secured Claim held by Capital One, N.A. (or its successors or assigns) secured by a lien on a 2008 Yamaha ATV.

Class 11A and 11B - The Allowed Secured Claim held by Capital One, N.A. (or its successors or assigns) secured by a lien on two ATVs, a 2007 Polaris ATV (Class 11A) and a 2010 Polaris ATV (Class 11B).

Class 12 - The Allowed Secured Claim held by Deere & Company (or its successors or assigns) secured by a lien on a John Deere MX10 rotary mower.

Class 13 - The Allowed Secured Claim held by East West Bank (or its successors or assigns) secured by a horse trailer.

Class 14 - The Allowed claims held by general unsecured creditors.

Class 15 - The Interests held by Dominguez.

## ARTICLE IV

## SPECIFICATION AND TREATMENT OF UNCLASSIFIED PRIORITY CLAIMS

As provided in Section 1123(a)(1) of the Code, the Claims against the Debtor covered in this Article IV are not classified. The holders of such Allowed Claims are not entitled to vote on the Plan.

4.1 - The holders of Allowed Claims of the type specified in Section 507(a)(2) of the Code, Administrative Claims, shall receive cash equal to the allowed amount of such Claim or a lesser amount or different treatment as may be acceptable and agreed to by particular holders of such Claims. Such Claims shall be paid in full on the Effective Date of the Plan, or treated as otherwise agreed to by the particular holders of such Claims, including a deferred payment from the monies paid out of the account established to pay unsecured creditors as set forth in paragraph 7.1 of the Plan. Section 507(a)(2) Administrative Claims that are allowed by the Court after the Effective Date of the Plan shall be paid upon allowance or as otherwise agreed. Tax liabilities arising from the Debtor's 2012 and 2013 tax returns, if any, will be paid in full as Administrative Claims. The Debtor shall timely file his 2013 federal and state tax returns. In the event of a dispute regarding the 2012 and 2013 taxes, the Debtor may request a hearing; and, in the event there is no dispute as to taxes, the taxes shall be paid without further court order or hearing.

4.2 - The Allowed Claims of a type specified in Section 507(a)(8) of the Code, Tax Claims of governmental taxing authorities, shall be paid on the Effective Date of the Plan or in monthly payments on an amortized basis over a period that does not exceed five years from the Petition Date with interest at the appropriate rate set by applicable statute.

4.3 - The Debtor will make all payments required to be paid to the U.S. Trustee pursuant to 28 U.S.C. § 1930(a)(6) until the case is closed, converted, or dismissed. All payments due to the U.S. Trustee pursuant to 28 U.S.C. § 1930(a)(6) shall be paid on the Effective Date, and the U.S. Trustee shall thereafter be paid fees due on a quarterly basis until the case is closed, converted, or dismissed.

# ARTICLE V

## SPECIFICATION AND TREATMENT OF CLASS 1 CLAIMS

5.1 - Allowed Class 1 Priority Claims shall be paid in full on the Effective Date. Class 1 is unimpaired. The Class 1 claims for certain pre-petition wages and employee Claims are more particularly described in Sections 507(a)(4) and 507(a)(5) of the Code. The Debtor does not have any employee and does not expect that any claims will exist in Class 1.

# ARTICLE VI

## SPECIFICATION AND TREATMENT OF SECURED CREDITOR CLAIMS

6.1 – **El Paso County Treasurer.** The Class 2 Secured Claims shall be treated as set forth herein. The Class 2 Secured Claims are impaired by this Plan. The Class 2 Secured Claims will be Allowed in their full amount and paid with interest at the applicable statutory rate. The Debtor shall have up to three (3) years following the Effective Date to pay the Class 2 Claims in full with applicable interest accrued on the unpaid balance at the statutory rate. The statutory rights of the Class 2 claimant are otherwise unaffected by this Plan.

6.2 – **JPMorgan Chase Bank, N.A, Class 3.** The Class 3 Secured Claim consists of the Allowed Secured Claim of JPMorgan Chase Bank, N.A (or its successors or assigns) secured by a deed of trust encumbering the property at 2245 Slocum Road, Peyton, Colorado. The Class 3 Allowed Secured Claim is impaired by this Plan. The Class 3 Secured Claim shall be paid pursuant to the underlying loan documents. The Debtor will cure pre- or post-Petition arrears, if any, within 90 days of the Effective Date of the Plan.

6.3 – **The Bank of New York Mellon, as Trustee/Vanderbilt Mortgage and Finance, Inc., Class 4.** The Class 4 Secured Claim consists of the Allowed Secured Claim held by The Bank of New York Mellon, as Trustee/Vanderbilt Mortgage and Finance, Inc. (or its successors or assigns) secured by a deed of trust encumbering the property at 2735 Slocum Road, Peyton, Colorado. The Class 4 Secured Claim is

impaired by this Plan. The Class 4 Secured Claim shall be treated under this Plan as follows:

  a.  The principal amount of the Class 4 Claim will be allowed in the amount due on such claim as of the Confirmation Date. The Class 4 Claim is fully secured.

  b.  The Class 4 Claim will bear interest at the rate of: (i) 5.0% per annum commencing on the Effective Date of the Plan; or (ii) if the Class 4 claimant objects to such rate in its objection to confirmation of the Plan prior to the commencement of the confirmation hearing, such rate will be determined by the Court as necessary to satisfy the requirements of 11 U.S.C. § 1129(b) of the Code; or (iii) such other rate as agreed by the Debtor and the Class 4 claimant.

  c.  The Class 4 Claim shall be amortized over a twenty (20) year period and paid in equal monthly installments from the Debtor's future income. Payments shall include property taxes and insurance.

  d.  The lien position held by the Class 4 claimant shall be unaltered by the Plan.

  e.  The Debtor may pre-pay the Class 4 Claim without penalty at any time.

6.4 – **PNC Mortgage, Class 5.** The Class 5 Secured Claim consists of the Allowed Secured Claim held by PNC Mortgage (or its successors or assigns) secured by a first deed of trust encumbering the property at 250 Haversham Drive, Colorado Springs, Colorado (the "Haversham Property"). The Class 5 Secured Claim is impaired by this Plan. The Class 5 Secured Claim shall be treated under this Plan as follows:

  a.  Class 5 shall be entitled to foreclose its deed of trust or otherwise pursue its rights with respect to its collateral and the Debtor shall be discharged from the Class 5 claim. Any deficiency claim held by the Class 5 creditor after foreclosure or other disposition of the Haversham Property shall be treated as a general unsecured claim in Class 14 pursuant to 11 U.S.C. § 506.

  b.  The lien position held by the Class 5 claimant shall be unaltered by the Plan.

6.5 – **Pikes Peak Regional Development, Class 6.**  The Class 6 Secured Claim consists of the Allowed Secured Claim held by Pikes Peak Regional Development (or its successors or assigns) secured by a second deed of trust encumbering the property at 250 Haversham Drive, Colorado Springs, Colorado and secured by a second deed of trust encumbering the property at 5655 and 5675 Parachute Circle, Colorado Springs, Colorado.  The Class 6 Secured Claim is impaired by this Plan.  The Class 6 Secured Claim shall be treated under this Plan as follows:

      a.     Pikes Peak Regional Development filed a Motion for Relief From Stay on July 12, 2013.  The Debtor did not oppose the Motion for Relief From Stay or otherwise restrict the Class 6 claimant's ability to pursue collection from its collateral.  The Haversham Property was sold at foreclosure on August 28, 2013.   PPRDC bid the sum of $169,234.07 and is the current owner of the Haversham Property.  Any deficiency claim held by the Class 6 creditor after foreclosure or other disposition of the collateral shall be treated as a general unsecured claim in Class 14 pursuant to 11 U.S.C. § 506.

      b.     The lien position held by the Class 6 claimant shall be unaltered by the Plan.

6.6 – **Ford Motor Credit Company, LLC, Class 7.**  The Class 7 Secured Claim consists of the Allowed Secured Claim held by Ford Motor Credit Company, LLC (or its successors or assigns) secured by a lien encumbering a 2008 Ford F450 truck.   The Class 7 Secured Claim is unimpaired by this Plan and has been paid off in full during the course of the Chapter 11 case and Ford has withdrawn its Proof of Claim.  Therefore, the Class 7 creditor shall have an allowed claim of $0.

6.7 – **Ally Financial, Class 8.**  The Class 8 Secured Claim consists of the Allowed Secured Claims held by Ally Financial (or its successors or assigns) secured by a lien encumbering a 2011 Chevrolet Avalanche.  The Class 8 Secured Claim is impaired by this Plan.  The Class 8 Secured Claim shall be treated under this Plan as follows:

      a.     The Debtor has surrendered the 2011 Chevrolet Avalanche.  Any deficiency after surrender and sale of the vehicle shall be treated as a general unsecured claim in Class 14 pursuant to 11 U.S.C. § 506.  The Debtor is advised

by Ally that no deficiency claim exists and Ally has withdrawn its Proof of Claim. Class 8 shall have an Allowed Claim of $0.

      b.     The lien position held by the Class 8 claimant shall be unaltered by the Plan.

6.8 – **Security Service Federal, Class 9.** The Class 9 Secured Claim consists of the Allowed Secured Claim held by Security Service Federal (or its successors or assigns) secured by a lien encumbering a Buick Enclave. The Class 9 Secured Claim is unimpaired by this Plan. The collateral securing the Class 9 claim was involved in an accident and the loan was paid off in full during the course of the Chapter 11. Class 9 shall have an Allowed Claim of $0.

6.9 – **Capital One, N.A., Class 10.** The Class 10 Secured Claim consists of the Allowed Secured Claim held by Capital One, N.A. (or its successors or assigns) secured by a lien on a 2008 Yamaha Rhino ATV. The Class 10 Secured Claim is impaired by this Plan. The Class 10 Secured Claim shall be treated under this Plan as follows:

      a.     The principal amount of the Class 10 Claim secured by the Yamaha Rhino ATV will be allowed in an amount of $2,500.00, unless the claimant objects to such amount in its objection to confirmation of the Plan, in which case the principal balance of the claim will either be agreed to by the parties or fixed by the Court at the confirmation hearing. The balance of the claim owed to the claimant in excess of the $2,500.00 shall be a Class 14 unsecured claim.

      b.     The Class 10 Claim will bear interest at the rate of: (i) 4% per annum commencing on the Effective Date of the Plan; or (ii) if the claimant objects to such rate in its objection to confirmation of the Plan, such rate will be determined by the Court as necessary to satisfy the requirements of 11 U.S.C. § 1129(b) of the Code; or (iii) such other rate as agreed by the Debtor and the Class 10 claimant.

      c.     The Class 10 claimant will retain all liens that secured its Claim as of the Petition Date, subject to payment modification as set forth herein.

11

   d. The monthly payment of the Class 10 Claim shall be calculated based upon a three (3) year amortization of the Claim and paid in monthly installments.

   e. The Debtor may pre-pay the Class 10 Secured Claim without penalty at any time.

 6.10 – **Capital One, N.A., Class 11A and Class 11B.**  The Class 11A and 11B Secured Claims consist of the Allowed Secured Claims held by Capital One, N.A. (or its successors or assigns) secured by a lien on two ATVs, a 2007 Polaris ATV (Class 11A) and a 2010 Polaris ATV (Class 11B).  The Class 11A and 11B Secured Claims are impaired by this Plan.  The Class 11A and 11B Secured Claims shall be treated under this Plan as follows:

   a. The Debtor shall surrender the 2007 and 2010 Polaris ATVs secured by the Class 11A and 11B claimant.  Any deficiency claims held by the Class 11 creditor after surrender and sale of the 2007 and 2010 Polaris ATVs shall be treated as general unsecured claims in Class 14.

 6.11 – **Deere & Company, Class 12.**  The Class 12 Secured Claim consists of the Allowed Secured Claim held by Deere & Company (or its successors or assigns) secured by a lien on a John Deere MX10 rotary mower. The Class 12 Secured Claim is unimpaired by this Plan and has been paid off in full during the course of the Chapter 11 case.  Therefore, the Class 12 creditor shall have an allowed claim of $0.

 6.12 – **East West Bank, Class 13.**  The Class 13 Secured Claim consists of the Allowed Secured Claim held by East West Bank (or its successors or assigns) secured by a horse trailer.  The Class 13 Secured Claim is impaired by this Plan.  The Class 13 Secured Claim shall be treated under this Plan as follows:

   a. The principal amount of the Class 13 Claim will be allowed in an amount of $20,000.00, unless the claimant objects to such amount in its objection to confirmation of the Plan, in which case the principal balance of the claim will either be agreed to by the parties or fixed by the Court at the confirmation hearing.  The balance of the claim owed to the claimant in excess of the $20,000.00 shall be a Class 13 unsecured claim.

     b.     The Class 13 Claim will bear interest at the rate of: (i) 4% per annum commencing on the Effective Date of the Plan; or (ii) if the claimant objects to such rate in its objection to confirmation of the Plan, such rate will be determined by the Court as necessary to satisfy the requirements of 11 U.S.C. § 1129(b) of the Code; or (iii) such other rate as agreed by the Debtor and the Class 13 claimant.

     c.     The Class 13 claimant will retain all liens that secured its Claim as of the Petition Date, subject to payment modification as set forth herein.

     d.     The monthly payment of the Class 13 Claim shall be calculated based upon a five (5) year amortization of the Claim and paid in monthly installments.

     e.     The Debtor may pre-pay the Class 13 Secured Claim without penalty at any time.

## ARTICLE VII
## SPECIFICATION AND TREATMENT OF
## UNSECURED CREDITOR CLAIMS

7.1 – The Class 14 claimants consists of those unsecured creditors of Dominguez who hold Allowed Claims.  Class 14 claimants shall receive payment of their Allowed Claims as set forth below:

     a.     The Class 14 claimants shall receive a pro-rata distribution based upon payments equal to $100 per month during the first year after the Effective Date of the Plan (a total of $1,200 during the first year), followed by a payment equal to $500 per month during the second, third and fourth years after the Effective Date of the Plan (a total of $18,000 during the second, third and fourth years).  Based on this payment structure, the payments due under the Plan for the four years after the Effective Date total $19,200.  Starting with the first full month after the Effective Date, the required monthly payments shall be held and deposited into a segregated account by the Debtor and distributed in accordance with the Plan.  Distributions shall be made semi-annually with the first payment commencing 6 months from the Effective Date of the Plan.  Each time six

monthly payments have been set aside, the Debtor shall make any payment due to Unclassified Priority Claimants and then the Class 14 distribution will be made to Class 14 creditors on a pro-rata basis. Dominguez may pre-pay the amounts set forth in this paragraph at any time without penalty.

      b.    In addition, the Class 14 claimants shall receive the Debtor's 51% of the net proceeds of the sale of the real property owned by F.A.D. Enterprises, LLC. This real property consists of an unencumbered, undeveloped 39.5 acre lot in Peyton, Colorado. The Debtor originally listed this property with a value of $40,000. Based on his assessment of the market and knowledge that similar lots for sale are not selling, the Debtor now believes the property value is closer to $25,000, of which his 51% is approximately $12,750. After real estate commissions and closing cost, the Debtor estimates the net proceeds may total $20,000, of which the Debtor's 51% is approximately $10,200. If F.A.D. Enterprises, LLC is unable to sell the real property, the Debtor will pay the Class 14 creditors an additional $10,000 on or before the four-years after the Effective Date of the Plan. Dominguez may pre-pay the $19,200 in monthly payments and the $10,000 for his 51% interest in F.A.D. Enterprises, LLC at any time without penalty. Once the pre-payment is made, no further payments shall be due to Class 14.

## ARTICLE VIII
### SPECIFICATION AND TREATMENT OF CLASS 15 INTERESTS

8.1 - Class 15 includes the Interests in Dominguez held by Dominguez. Class 15 is impaired by this Plan. On the Effective Date of the Plan, Class 15 shall retain its interests in all remaining properties and assets which it owned prior to the Confirmation Date and are to be retained pursuant to the Plan. However, in the event that Class 14 votes to reject the Plan, all property of the estate that is non-exempt and/or constitutes a member interest in any of the Debtor's businesses shall either be abandoned and Class 15 shall not receive or retain any property on account of its interest under the Plan; or, at the election of Dominguez, Dominguez, or any creditor, shall be entitled to purchase

such property and member interests for $10,000 or such other price as may be determined by the Court.

## ARTICLE IX
## MEANS FOR THE PLAN'S EXECUTION

9.1 - **Operation of Business.** The Debtor shall be empowered to take such action as may be necessary to perform his obligations under this Plan.

9.2 – **Funding.** Funding for the Plan will be derived from the Debtor's post-petition earnings, and the sale of certain property owned by F.A.D. Enterprises, LLC, the Haversham Property and Parachute Circle Properties (if sale is possible and if any net proceeds remain after payment of secured creditors). The value of the property to be distributed under the Plan is not less than the projected disposable income of Dominguez, computed in accordance with Code § 1325(b)(2) over the five year period commencing on the date the first payment is due under the Plan, notwithstanding the fact that the Plan provides for payment over three years.

9.3- **Effectuating the Plan.** On the Effective Date of the Plan, the Debtor shall be appointed as the agent pursuant to 11 U.S.C. § 1142(b) for the purpose of carrying out the terms of the Plan, and taking all actions deemed necessary or convenient to consummating the terms of the Plan, including but not limited to execution of documents.

9.4 - **Disputed Claim Procedure.** Distributions to any class of creditor will only be made on account of Allowed Claims. In the event that distributions are made at a time that a claim objection is pending before the Court or a judgment has entered to establish a Claim and the judgment is not subject to a Final Order, the portion of the distribution that would be paid to the disputed claimant will be held in an interest bearing bank account until the Claim is Allowed or disallowed. If Allowed, the Claim will be paid its appropriate share of the withheld payment. If disallowed, the withheld distribution will be paid on a Pro Rata basis to the remaining impaired Allowed claimants, or if all holders of Allowed Claims have been paid in full, paid to Debtor.

9.5 – **Claim Objections and Avoidance Actions Bar Date and Standing.** All Claim objections and Avoidance Actions in the case must be filed no later than 90 days

following the Effective Date. The Debtor shall have standing to commence, prosecute, and settle claim objections, and avoidance actions without need for Court approval.

9.6 - **Reserved Claims**. The Debtor reserves the right to pursue any causes of action or assert any defenses he may have, including any and all rights under all applicable agreements and state and federal law, including, but not limited to, all rights of setoff and recoupment, indemnification, subrogation, contribution and exoneration. Such reservation of rights includes, but is not limited to, rights with respect to any co-owner of property of the Debtor and to any member or partner of any business entity in which the Debtor is also a member or partner, including, but not limited to Magdelena Dominguez, Juan M.T. Treviso, and Alonso Dominguez. The Debtor shall have standing to commence, prosecute, and defend any and all Reserved Claims without need for Court approval.

9.7 - **Administrative Expense Bar Date.** All applications for allowance and payment of Administrative Claims, including Professional Fees, must be filed within 60 days following the Effective Date of the Plan.

9.8 - **Monthly Installments.** Whenever the Plan provides for payment in monthly installments or a payment due in a certain month, the payment shall be due on the last day of the calendar month in which the payment is due, unless otherwise specified in the Plan. The Debtor shall then have a five day grace period within which the monthly payment must be received by the payee before the Debtor shall be in default, unless a longer period is specified elsewhere in the Plan.

9.9 - **Final Decree.** The Debtor will request entry of an order closing his case on or before the later of the date all Claim objections and any pending litigation is concluded or 180 days after the Effective Date of the Plan. Upon completion of all payments due to Unclassified Priority Claims and Class 14, Dominguez will request his case be reopened for entry of a final decree and discharge order.

9.10 - **Quarterly Fees.** Prior to the entry of the final decree, the Debtor shall continue to remit quarterly fees and post-confirmation reports to the United States Trustee, as required by statute.

9.11 - **Exemption from Transfer Taxes.** Pursuant to Section 1146(c) of the Code, the issuance, transfer, or exchange of notes or equity securities under the Plan by

16

the Debtor, the creation of any mortgage, deed of trust, or other security interest, the making or assignment of any lease or the making or delivery of any deed or instrument of transfer under, in furtherance of, or in connection with the Plan or the Agreements shall not be subject to any stamp, real estate transfer, mortgage recording, or other similar tax.

9.12 – **Contractual Relationship.**  The Plan, upon confirmation, constitutes a new contractual relationship by and between the Debtor and his creditors.  In the event of a default by the Debtor under the Plan, creditors shall be entitled to enforce all rights and remedies against the Debtor for breach of contract, the Plan.  Any secured creditor claiming a breach of the Plan by the Debtor will be able to enforce all of their rights and remedies including foreclosure of their deed of trust, security agreement, lien, or mortgage pursuant to the terms of such document.  Any creditor claiming a breach by the Debtor must provide written notice to the Debtor of the claimed default.  The notice must provide the Debtor a ten (10) day period within which to cure the claimed default, unless a longer period is specified elsewhere in the Plan.  Upon the Debtor's failure to cure the default within such ten day period, the creditor may proceed to exercise their rights and remedies.

## ARTICLE X
## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

10.1 - On the Effective Date of the Plan, the Debtor does hereby assume those executory contracts and unexpired leases listed in Exhibit A attached hereto and incorporated herein by reference, which have not been assumed by prior Order of the Court prior to the Confirmation Date.  On the date of the entry of an Order confirming the Plan, the Debtor shall be the holder of all right, title and interest to the assumed leases and contracts and such assumed leases and contracts shall be in full effect and binding upon the Debtor and the other parties thereto.  Confirmation of the Plan shall constitute a determination that the payments to be made to said creditors pursuant to the Plan satisfy all conditions precedent to assumption and assignment set forth in 11 U.S.C. § 365(b) and (f).

17

10.2 - On the Effective Date of the Plan, the Debtor will reject all executory contracts and unexpired leases to which he is a party which are listed in Exhibit B, attached hereto and incorporated herein by reference which have not been rejected by prior Order of the Bankruptcy Court prior to the Confirmation Date. Executory contracts and unexpired leases will be rejected pursuant to the provisions of 11 U.S.C. § 365. Any executory contract or unexpired lease not assumed in accordance with the Plan shall be rejected.

10.3 - An Order confirming this Plan constitutes approval by the Court of the assumption or rejection of the executory contracts and unexpired leases described herein in accordance with the provisions of 11 U.S.C. § 365 and the Rules.

10.4 - **Claims Arising from Rejection.** All proofs of claim with respect to claims arising from the rejection of any executory contract or unexpired lease shall be filed with the Bankruptcy Court within twenty (20) days after the earlier of (i) the date of the Bankruptcy Court order approving the Debtor's rejection of such executory contract or unexpired lease or (ii) the Confirmation Date. Any claims not filed within such time shall be forever barred against the Debtor, his estate and property and any such Claims shall be disallowed in full. Claims arising from such rejection, to the extent Allowed, shall be treated as Class 14 unsecured Claims.

## ARTICLE XI
## MISCELLANEOUS PROVISIONS

11.1 - **Revestment.** On the Effective Date of the Plan all property of the estate shall revest in the Debtor free and clear of all liens except those specifically set forth in the Plan or as otherwise provided in the Plan

11.2 - **Retention of Jurisdiction.** Notwithstanding confirmation of the Plan, the Court shall retain jurisdiction for the following purposes:

a.   Determination of the allowability of claims upon objection to such claims by the Debtor-in-Possession or by any other party in interest;

b.   Determination of the request for payment of claims entitled to priority under 11 U.S.C. § 507(a)(2), including compensation of the parties entitled thereto;

18

c. Resolution of any disputes regarding interpretation of the Plan;

d. Implementation of the provisions of the Plan and entry of orders in aid of consummation of the Plan, including without limitation, appropriate orders to protect the revested Debtor from action by creditors;

e. Modification of the Plan pursuant to 11 U.S.C. § 1127;

f. Adjudication of any causes of action, including avoiding powers actions, brought by the debtor-in-possession, by the representative of the estate or by a Trustee appointed pursuant to the Code;

g. Adjudication of any cause of action brought by the debtor-in-possession, Creditors Committee, by a representative of the estate, or by a Trustee appointed pursuant to the Code, or the revested Debtor exercising rights and powers as provided in 11 U.S.C. §§ 542-549. This section shall not be construed to limit any other power or right which the Debtors may possess under any section of the Code; and

h. Entry of a final decree.

11.3 - **Satisfaction of Claims.** The Debtor shall receive a discharge effective at the conclusion of making all payments due to Unclassified Priority Claims and Class14 claims. Confirmation of the Plan shall constitute a modification of any note or obligation for which specification and treatment is provided under the Plan as set forth in the Plan. Any obligation or note, previously in default, so modified, shall be cured as modified as of the Effective Date. This provision shall be operable regardless of whether the Plan provides for any obligation to be evidenced by a rewritten loan or security document following confirmation of the Plan.

11.4 - **Headings.** The headings used in the Plan are for convenience of reference only and shall not limit or in any manner affect the meaning or interpretation of the Plan

11.5 - **Notices.** All notices, requests, demands, or other communications required or permitted in this Plan must be given in writing to the party(ies) to be notified. All communications will be deemed delivered when received at the following addresses:

     a.     To:
Francisco J. Dominguez
2245 Slocum Road
Peyton, Colorado 80831

With a copy to:
Lee M. Kutner
Kutner Brinen Garber, P.C.
303 East 17th Avenue, Suite 500
Denver, CO 80203
Fax: 303-832-1510
Email:lmk@kutnerlaw.com

     b.     To an allowed claimant, at the addresses set forth in the allowed Proof of Claim, if filed, or, at the address set forth for the claimant in the Debtor's Schedules filed with the Court.

11.6 - **Successors and Assigns.** The Plan will be binding upon the Debtor, any creditor affected by the Plan and their heirs, successors, assigns and legal representatives.

11.7 - **Unclaimed Payments.** If a person or entity entitled to receive a payment or distribution pursuant to this Plan fails to negotiate a check, accept a distribution or leave a forwarding address in the event notice cannot be provided as set forth in paragraph 11.5, within six months of the Effective Date of the Plan, the person or entity is deemed to have released and abandoned any right to payment or distribution under the Plan.

11.8 - **Committee Existence.** Any Creditors Committee appointed in the bankruptcy case shall be terminated as of the Effective Date of the Plan.

11.9 – **Case Closure.** The Debtor may close the case following confirmation of the Plan and prior to receipt of a discharge. On motion the Debtor may reopen the case to request entry of a discharge, once all of the appropriate payments have been completed. In the event the Debtor's case is closed prior to entry of a discharge, all creditors shall be prohibited and are enjoined from taking any actions against the Debtor or any of the Debtor's property that were formerly enjoined pursuant to 11 U.S.C. § 362.

## ARTICLE XII

## CONFIRMATION REQUEST

12.1 - The Debtor, as proponent of the Plan, requests confirmation of the Plan pursuant to 11 U.S.C. § 1129.  The Debtor will solicit acceptance of the Plan after the Disclosure Statement has been approved by the Court and is transmitted to the creditors, interest holders and parties in interest.  In the event the Debtor does not obtain the necessary acceptances of its Plan, he may make application to the Court for confirmation of the Plan pursuant to 11 U.S.C. § 1129(b).  The Court may confirm the Plan if it does not discriminate unfairly and is fair and equitable with respect to each class of Claims or Interests that is impaired and has not voted to accept the Plan.


DATED: February 3, 2014


_____
Francisco J. Dominguez


Lee M. Kutner
Leigh A. Flanagan
Kutner Brinen Garber, P.C.
303 East 17th Avenue, Suite 500
Denver, CO 80203
Telephone:  303-832-2400
Fax: 303-832-1510
Email: lmk@kutnerlaw.com
Email: laf@kutnerlaw.com
ATTORNEYS FOR FRANCISCO J. DOMINGUEZ
DEBTOR AND DEBTOR-IN-POSSESSION

## ARTICLE XII
## CONFIRMATION REQUEST

12.1 - The Debtor, as proponent of the Plan, requests confirmation of the Plan pursuant to 11 U.S.C. § 1129. The Debtor will solicit acceptance of the Plan after the Disclosure Statement has been approved by the Court and is transmitted to the creditors, interest holders and parties in interest. In the event the Debtor does not obtain the necessary acceptances of its Plan, he may make application to the Court for confirmation of the Plan pursuant to 11 U.S.C. § 1129(b). The Court may confirm the Plan if it does not discriminate unfairly and is fair and equitable with respect to each class of Claims or Interests that is impaired and has not voted to accept the Plan.

DATED: February 3, 2014

Francisco J. Dominguez

Lee M. Kutner
Leigh A. Flanagan
Kutner Brinen Garber, P.C.
303 East 17th Avenue, Suite 500
Denver, CO 80203
Telephone: 303-832-2400
Fax: 303-832-1510
Email: lmk@kutnerlaw.com
Email: laf@kutnerlaw.com
ATTORNEYS FOR FRANCISCO J. DOMINGUEZ
DEBTOR AND DEBTOR-IN-POSSESSION

21

## EXHIBIT A

### Executory Contracts and Unexpired Leases Assumed

1.      All contracts and leases previously assumed or for which a motion to assume is pending.

2.      All leases and contracts that are not specifically rejected.

3.      Oral lease for modular home at 2735 Slocum Road ($565/month) (continue "as is" under oral lease).

4.      Lease with State for possessory interest in 480 acres located in R64, T13, S36.

## EXHIBIT B

### Executory Contracts and Unexpired Leases Rejected

1.      All leases and contracts previously rejected by Court Order.

2.      Commercial Lease Agreement for storage at AMO Acres, Slocum Road, Peyton, CO 80831.  December 1, 2007 – November 30, 2017

3.      Commercial Lease Agreement for 5655 and 5675 Parachute Circle between Dominguez Family, LLLP (lessor) and Edemco Dryers, Inc. (lessor).  May 1, 2006 – April 30, 2017

## CERTIFICATE OF SERVICE

The undersigned certifies that on February 3, 2014 a copy of the **THIRD AMENDED PLAN OR REORGANIZATION DATED FEBRUARY 3, 2014** was served by U.S. Regular Mail in accordance with FED. R. BANKR. P. 2002 and 11 U.S.C. § 342(c), (if applicable), on the following interested parties at the addresses below:

Cristel D. Shepherd, Esq.
1515 Wynkoop, Suite 600
Denver, CO 80202

Timothy J. Lamb, Esq.
1401 17th St.
Suite 330
Denver, CO 80202

Thomas J. Bissell, Esq.
1700 Lincoln St.
Ste. 4000
Denver, CO 80203-4505

Cynthia Lowery-Graber, Esq.
Deanna L. Westfall, Esq.
999 18th Street
Ste. 2201
Denver, CO 80202

Steven L. Zimmerman, Esq.
9725 E. Hampden Ave.
Ste. 330
Denver, CO 80231

Chad S. Caby, Esq.
One Tabor Center
Suite 3000
Denver, CO 80202-5855

David Hyams, Esq.
1200 17th St.
Ste. 3000
Denver, CO 80202

James B. Holden, Esq.
1300 Broadway
8th Floor
Denver, CO 80203

John C. Patton, Esq.
PO Box 945
Cheyenne, WY 82003-0945

Leo M. Weiss, Esq.
999 18th St.
Ste. 1551
Denver, CO 80202

*s/ Angela R. Upton*
Angela R. Upton